CASE 105—ACTION BY C. J. ROACH AGAINST CADIZ RAILROAD COMPANY
TO CANCEL A WRITING DONATING LAND TO SAID RAILROAD COM-
PANY.—FEB. 2ᶠ

# Cadiz Railroad Co. v. Roach.

PPEAL FROM TRIGG CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. REVERSED.

RAILROADS—-RIGHT OF WAY—DONATION TO RAILROAD—CONSIDERATION
—ESTOPPEL.

Held: 1. Where plaintiff, with a number of other landowners, agreed
to donate land as a railroad right of way, and it appeared that
it was three miles and a half from his residence to the nearest
depot, and that the building of the new railroad would provide
a depot within a mile and a half, the necessary increase in the
value of plaintiff's land was a sufficient consideration for his
agreement.

2. Where a landowner agreed to donate land to a railroad company
for a right of way, and thereafter the railroad commenced work
upon its road, and graded the roadbed to a point near the
grantor's land, who, then, for the first time, repudiated his grant,
he was estopped from denying the obligation of his agreement
on the ground that it was without consideration.

3. The partial building of a railroad in reliance on a promise to do-
nate a right of way was a sufficient detriment to the promisee
to constitute a good consideration for the promise.

SIMS & THOMAS, ATTORNEYS FOR APPELLANT.

It appears from the uncontroverted allegations of the answer
to plaintiff's petition that numerous citizens of Cadiz and vicin-
ity organized a company known as the Cadiz Railroad Compa-
ny for the construction of a line of railway from Cadiz, Ky.,
to Gracey, by private subscription, and that appellee, with
others, donated the right of way, to the company over their
lands to aid in this reciprocal enterprise.

The appellee donated the right of way over his land by a
writing as follows:

"Cadiz, Ky., Feb. 21, 1901. I hereby donate to the Cadiz
Railroad Company, a sixty foot right of way through my farm
according to survey. C. J. Roach."

Cadiz Railroad Company v. Roach.

Of the many who contributed the right of way appellee alone seeks, in a court of equity, to avoid his contract.

In his original petition he pleads that his signature was obtained by gross misrepresentation and fraud, but finding he could not sustain this plea, he, by an amended petition, pleads "no consideration."

. We maintain that this plea can not be upheld for several reasons:

1. Because "he who seeks equity must do equity." This rule is correct in principle and in morals, else the world would be victimized by pretenders in all branches of business in life.

2. Another rule touching the law of contract is this, in substance: "Any advantage to promisor or prejudice to promisee," is sufficient consideration to uphold the contract.

3. Another rule is that "whenever several promise to contribute to a common object, desired by all, the promise by each is a good consideration for the promise of the others."

4. And still another rule is, that, "An obligation executed for a donation to any lawful or beneficial object or enterprise is binding when there are agents or trustees authorized to receive or dedicate the donation to the purpose intended."

The appellee made no complaint or objection to the road until the right of way had been cleared off by the railroad crew along the line and graded for about seven miles from Cadiz out near to appellee's land at an expense of $15,000 or $20,000, when he filed his suit and stopped the work.

For these reasons and others not mentioned we ask a reversal of the judgment appealed from.

### AUTHORITIES CITED.

Stapp v. Anderson, 1 Marshall, 538; Overstreet v. Phillips, 1 Littell, 121; Rudd v. Hanna, 4 Monroe, 532; Harrod v. Black, 1 Duv., 181; Twin Creek, & C. T. P. R. R. Co. v. Lancaster, 79 Ky., 552; Collier v. Baptist E. Society, 8 B. M., 68; Trustees Ky. F. O. School v. Fleming, 10 Bush, 238.

KELLY & SON AND D. P. SMITH, FOR APPELLEE.

The questions to be considered in this case are:

1. Was the contract obtained by fraud?

2. Was there any consideration for the contract?

3. Right of way being a gift, was possession ever delivered?

Appellee was not one of a number of persons contributing to a common enterprise for mutual benefit, but as an outsider he promised a donation to the company after it was formed. The company could not have relied on the donation of right of way by appellee in the sense that it was in any way induced thereby

to begin the construction of its road, for the reason that it had been formed independently of the right of way and to carry out the purpose for which it was organized it had to purchase the right of way if it was not given. This, every stockholder and incorporator knew from the beginning. Appellee got no stock in the company, and therefore was not on a common level with other contributors and to receive mutual benefit with them.

Possession of the land was never given by appellee, except after suit was filed it was agreed by the parties that the road should be built on said land without either party waiving any rights in the premises. Twin Creek & C. Turnpike Co. v. Renaker, 3 Rep., 368; Henry Banks v. John Mays' Heirs, &c., 1 Marshall, 435.

OPINION OF THE COURT BY JUDGE SETTLE—REVERSING.

The appellant railroad company undertook to construct and operate a railroad between Cadiz and Gracey, in Trigg county, Ky., for which purpose it received subscriptions in money and donations of right of way over the lands of divers citizens of that county. The appellee, C. J. Roach, gave such right of way over his land, evidenced by the following writing, signed by him and one L. A. Miller, who had likewise given appellant the right of way over his land: "Office of Cadiz Railroad Company. Cadiz, Ky., Feb'y. 21st, 1901. I hereby donate to the Cadiz Railroad Company a 60-foot right of way through my farm, according to surveys. L. A. Miller, C. J. Roach." It appears from the record that the route for the railroad had previously been surveyed through appellee's land, and marked by stakes. After the execution of the writing mentioned, appellant began the work of constructing its road; and, while engaged in cutting and removing timber and undergrowth from the right of way through appellee's land, the latter met the foreman in charge of appellant's workmen, and forbade the doing of any further work on his land, and soon thereafter instituted this action to obtain a cancellation of the writing whereby appellant had been granted the right of way

Cadiz Railroad Company v. Roach.

over his land, upon the alleged ground that it had been procured by fraud. The original petition avers, in substance, that appellee was induced to execute the writing upon the false representation made by appellant's agents at the time that all of the neighbors had donated to appellant the right of way over their lands for its road, and in fact that the right of way had been donated from Cadiz to appellee's farm. It is further averred that this statement was false, but that he, being unaware of its falsity, was induced thereby to execute the writing, which he would not otherwise have done. Afterwards an amended petition was filed, in which it was alleged that the writing in question was and is without consideration, and consequently void. The answer of appellant specifically denies the allegations of fraud and want of consideration contained in the petition as amended, and avers that the work of building its line of railroad was undertaken by the citizens of Trigg county upon subscriptions of money and donations of lands for the right of way, that appellee's grant of the right of way over his land was made pursuant to this undertaking, and that appellant, relying upon these subscriptions and donations, including that of appellee, had commenced the construction of its line of railroad, and proceeded with the same to the extent of expending $15,000 or $20,000 in grading and otherwise preparing its roadbed for laying ties and rails. The answer further avers that the subscriptions and mutual undertaking of the parties to construct the railroad constituted a good and sufficient consideration for the subscriptions made, whether of money or right of way, and, in addition, that appellant's land will be greatly enhanced in value by the building of the railroad and the erection of a depot, which will be only a mile and a half from his residence. By consent of parties the evidence

on the issues formed by the pleadings was heard orally by the court, and the trial resulted in a judgment in favor of the appellee, from which, and the refusal of the lower court to grant it a new trial, appellant prosecutes this appeal.

It is proper to say that the charge of fraud in the procurement of appellee's signature to the writing executed by appellee was wholly disproved on the trial, and the only remaining question for this court to determine is as to the plea of no consideration.

We find that appellee, when asked by appellant's agents, Street & Gaines, to give the right of way, said he "wanted the road." In thus expressing himself, appellees seem to have been actuated by the general desire that inspired his neighbors and friends to contribute to the one common object that was expected to benefit the people of the county, which was the securing of a railroad. The undertaking originated with the citizens of Cadiz and vicinity, for they alone seem to have furnished by subscription the capital necessary to the success of the enterprise—some giving money, and others the right of way over their lands. "Where several promise to contribute to a common object, desired by all, the promise of each may be a good consideration for the promise of the others." Parsons on Contracts, vol. 2, page 452; Twin Creek & Colmanville T. P. Road Co. v. Lancaster, etc., 79 Ky., 552, 3 R., 368; Stovall v. McCutchen & Co., 21 R., 1317, 54 S. W., 969, 47 L. R. A., 287. But whether we are to regard appellee's grant to appellant of the right of way over his land as binding, upon the principle of mutuality, or not, we can not regard it as a mere gift of his property to a public charity, for by the building of the road he will derive profit from the increase in the value of his land. Besides, it appears that

Cadiz Railroad Company v. Roach.

it is three and a half miles, or more, from his residence to the nearest depot, whereas the building of the new railroad will provide. a depot within a mile and a half of his residence.

There is yet another ground which we think, in all fairness, should operate as an estoppel to the plea of no consideration made by appellee. We find from the record that no work had been done by appellant in constructing its road at the time appellee executed the writing granting the right of way over his land, which was February 21, 1901, but after that date work was begun, and continued down to June or July, 1901, during which time the roadbed had been graded from Cadiz, a distance of seven miles, to a point near appellee's land; and, as it then became necessary for appellant's servants to grade and construct the roadbed on appellee's land, they went upon the same for that purpose, and had about finished clearing the roadway thereon of timber and other obstructions, when appellee met them, and for the first time advised them of his purpose to repudiate the writing granting the right of way, and by his command the work was then and there stopped. We know of no reason why the law of equitable estoppel should not be made to apply to a case like this. Indeed, we are told in the very admirable work of Thompson on the law of Corporations, vol. 4, sec. 5279, that it may be applied "where a landowner encourages, actively or passively, the appropriation of his land by a corporation for public use;" and we may add that a greater reason exists for its application where the landowner has, in writing, expressly consented to such use of his land.

There is yet another rule of law which holds that "any advantage to promisor or prejudice to promisee" is a sufficient consideration to support the contract. Stapp v.

Bacon's Ex'r, 1 A. K. Marsh., 538. Applying this rule to the facts of the case at bar, we find that appellant, relying in good faith upon the subscriptions and donations made in aid of its undertaking, including the donation from appellee of the right of way over his land, began the construction of its road, and completed the roadbed to appellee's land, expending, as alleged, $15,000 or $20,000 in so doing. We think, therefore, that in view of the labor and expense thus incurred by appellant, superinduced, as it was, in part, by the grant from appellee of the right of way over his land, it would greatly prejudice its rights to permit appellee to withdraw the permission given to it to run its railroad over his land.

For the reasons herein given, the judgment of the lower court is reversed, and cause remanded, in order that appellee's petition may be dismissed.