## Nickell, et al. v. Johnson.

(Decided February 4, 1915.)

### Appeal from Wolfe Circuit Court.

1. Statute of Frauds—Contracts.—The Statute of Frauds (Section 470, Subsection 7, of the Kentucky Statutes), which prohibits the bringing of an action upon an agreement which is not to be performed within one year from the making thereof, refers to a contract which, by its terms, is not to be performed within a

year, and which, from its very stipulations, is not capable of being performed within a year.

2. Statute of Frauds.—If a contract is capable of being performed within a year it is not within the Statute of Frauds.

3. Contracts.—The early rule was that any contract which tended to restrain trade was void; but the rigor of that rule has long since been relaxed, so that contracts in reasonable restraint of trade are now recognized as valid.

4. Contracts—Restraint of Trade.—A contract in restraint of trade will be enforced only when the restraint is no more extensive than is reasonably required to protect the interest of the party in whose favor it is given, and is not so large as to interfere with the interest of the public.

5. Contracts—Sale of Business—Agreement Not to Engage in Business.—A contract by which the defendant sold his stage line business to the plaintiffs for a valuable consideration, and agreed not to again engage in that business between the points covered by his former stage line, and not to compete with the plaintiffs in said business, is a valid contract, and will be enforced by injunction proceedings against the defendant.

S. MONROE NICKELL for appellant.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER— Reversing.

This appeal involves the correctness of the judgment of the circuit court which sustained a demurrer to plaintiff's petition, and subsequently dismissed it upon appellant's failure to amend it.

Briefly stated, the petition alleges that prior to December 1, 1912, the appellant, Nickell, and the appellee, Johnson, were partners engaged in running a stage line for the carriage of passengers and the United States mail between Hazel Green and Hellechawa, towns in Wolfe County about six miles apart; that in December' 1912, Johnson announced his intention to leave Kentucky and go west, and offered to sell out his half interest in the stage line to his partner, Nickell, and to Coldiron, who was running a rival line between the same points; that the plaintiffs, Nickell and Coldiron, accepted Johnson's propostion by buying his interest in said hack line, including his good will, and his interest in the partnership and the business in which they were engaged, Johnson reserving to himself his two horses and hack which he had used in the business; and that the consideration for said trade was $20.00 in cash and the agreement of appellants to carry the mail and release Johnson from any liability upon that undertaking. The petition further

alleges that Johnson agreed not to operate or run a stage line or carry passengers or express between said points, or intervening points, at any time while the said Nickell should continue the business between said points, and that the said Johnson would conduct no business between said points in opposition to or in competition with the plaintiffs Nickell and Coldiron.

It is further alleged that it was not the object or purpose of the parties to said contract to raise or increase the rates charged for carrying passengers, freight or express between said points, and that plaintiffs had not increased said rates, which were only reasonable and compensatory charges for the services rendered. Nevertheless, according to the petition, Johnson broke his contract by placing his hack back on said road and carrying passengers between said points in competition with the appellants, and to their damage in the sum of $500.00. The petition prayed judgment against Johnson for $500 and for an injunction restraining him from either directly or indirectly operating or running a hack or carriage in violation of his contract.

Since the circuit judge assigned no ground for sustaining the demurrer to the petition, we can only conjecture the reason for the ruling.

The demurrer could not have been sustained upon the theory that the contract was in violation of the Statute of Frauds, in that it was not to be performed within one year. It is true the contract specified no time for its duration; but that did not make the contract unenforceable.

The Statute of Frauds (Section 470, sub-section 7 of the Kentucky Statutes), which prohibits the bringing of an action upon an agreement which is not to be performed within one year from the making thereof unless the contract be in writing, refers to a contract which, by its terms, is not to be performed within a year, and which, from its stipulations, is not capable of being performed within a year.

. In Stowers v. Hollis, 83 Ky., 548. the rule is stated as follows:

"If the performance of a contract depends upon a contingency which may happen within a year, then it is not within the statute, although that contingency may not in fact happen until after the expiration of the year; and although the parties may not have expected that it

would occur within that period. It is sufficient if the *possibility* of performance existed.''

If the contract is capable of being performed within a year, it is not within the statute. To illustrate: If A agrees to pay B $100.00 when B marries, the agreement is not within the statute, because the time of performance is not fixed in the contract at a period beyond a year. So, a contract to provide for one during his life is not within the statute, for the same reason. In these illustrations there is nothing in the contracts to preclude their performance within a year by fixing their time of performance beyond a year. These illustrations are taken from Dickey v. Dickinson, 105 Ky., 751, 88 Am. St. R., 337, where Dickey, the plaintiff in the circuit court, had bought from Dickinson his one-third interest in the ''Glasgow Times'' newspaper, Dickinson having obligated himself not to again engage in the newspaper business in the town of Glasgow. Dickinson violated his contract by starting a rival newspaper, whereupon Dickey sued to enforce his contract. That action is in principle on all-fours with the case at bar. In Dickey v. Dickinson, the circuit court dismissed the petition on demurrer, as was done in the case at bar; but in reversing that judgment the court said:

''A contract not to again engage in publishing a newspaper in a given place is a personal contract not to do so during the life of the party so contracting; and, if his death ensue without his having done so, the contract is fully performed. Such a contract does not fix in terms a time certain for its performance, and hence it cannot be said that it fixed the time for performance beyond a year. The time is left open by the parties, and, if death may fulfill it or effect its performance within a year, the contract is not within the statute.''

Dickey v. Dickinson was followed in Yellow Poplar Lumber Co. v. Rule, 106 Ky., 455, where it was held that a contract to employ the plaintiff so long as defendant was engaged in the saw mill business on the Ohio River was not within the Statute of Frauds, the contract being possible of performance within a year. To the same effect see McDaniel v. Hutcherson, 136 Ky., 415; Ford Lumber & Mfg. Co. v. Cobb, 138 Ky., 179; American Central Ins. Co. v. Leake, 31 Ky. L. R., 1018.

Neither do we think the contract was illegal as being in restraint of trade. The early rule was that any contract which tended to restrain trade was void; but the

rigor of that rule has long since been relaxed, so that now the rule is that contracts in reasonable restraint of trade are recognized as valid. Merchants' Ice & Cold Storage Co. v. Rohrman, 138 Ky., 540; 30 L. R. A. (N.S.), 973.

Covenants in partial restraint of trade are now generally upheld as valid when they are agreements by a seller of business not to compete with the buyer in such a way as to decrease the value of the business; by a retiring partner not to compete with the firm; by a retiring partner not to do anything to hinder the business of the partnership; by an assistant or agent not to compete with his master or his employer after the expiration of his term of service; by the buyer of property not to use it in competition with the business retained by the seller; or an agreement made by the lessor of property not to use it in competition with the business of the lessee. It is a general rule, however, that all contracts of this character must be incident to and in support of another contract or sale in which the covenantor has an interest which is in need of protection. Barrone v. Moseley Bros., 144 Ky., 698; Sutton v. Head, 86 Ky., 156; Louisville Board of Fire Underwriters v. Johnson, 133 Ky., 797.

The reason for the rule was well stated in Clemmons v. Meadows, 123 Ky., 181, 6 L. R. A. (N. S.), 847, as follows:

"Such contracts are intended to secure to the purchaser the good will of the trade or business, and as a guaranty the vendor agrees not to engage in like business or trade at that place for a specified time. In these cases the restraint to be valid must (not) be more extensive than is reasonably necessary for the protection of the vendee, in the enjoyment of the business which he has purchased. In this class of cases the court recognizes that the vendor has received an equivalent for his agreement to partially abstain from business at the place where his business was formerly conducted. In such cases the agreement does not contemplate that the business or trade purchased shall be discontinued and thus perhaps throw out of employment those whose services were necessary to carry on the business; but, on the contrary, it is contemplated that the business will be carried on and that the public will continue to receive benefits which may accrue from the conduct of the business. It results that the agreement does not have the effect of depriving the public of any benefits which it has enjoyed from the conduct of the business, or pursuit of the trade which has been

transferred to another. Such contracts do not have the effect of destroying the competition which existed by reason of which the public enjoyed benefits.''

Or, as the rule was summarized in Barrone v. Moseley Bros., *supra*, ''a contract in restraint of trade will be enforced only when the restraint is no more extensive than is reasonably required to protect the interest of the party in whose favor it is given, and is not so large as to interfere with the interests of the public.''

Linneman & Moore v. Allison & Yates, 142 Ky., 309, is in point. In that case Menninger sold his livery and undertaking business, together with his good will, to the plaintiffs, and agreed not to engage in the same business within fifty miles of the place where the business was located for a period of ten years. In response to the contention that the contract should not be enforced against Menninger because it was an undue restraint of trade, this court said:

''Nor will Menninger be deprived of an opportunity to pursue his business, or the country be deprived of the benefits of his exertions; for, outside of the restricted boundary there is plenty of territory left wherein he may engage in business; and at the expiration of the time limit he may also engage in business in the city of Covington. We, therefore, conclude that the restriction contained in the contract in question is reasonable, and that the chancellor properly granted the relief prayed for.''

There are many cases to the same effect. The facts stated in the petition fully satisfied both rules above announced.

We conclude, therefore, that the petition in the case at bar stated a cause of action, and the demurrer thereto was improperly sustained.

Judgment reversed with instructions to overrule the demurrer to the petition and for further proceedings.