## Owens v. Henderson Brewing Co., et al.

(Decided October 21, 1919.)

## Appeal from Muhlenberg Circuit Court.

1. Intoxicating Liquors—Misrepresentation of Brewery—Recovery of Damages Against.—One who in good faith buys, for resale in his store, a soft drink labeled "non-intoxicating" in reliance upon the assurance of the brewery that it is non-intoxicating, and who is charged, arrested, convicted, fined and imprisoned for selling the alleged soft drink, may recover damages of the brewery.

2. Damages—Wrongful Misconduct of Another—Recovery. — The mere fact that one is found guilty of a violation of a statute will not prevent his recovery of damages where he acted in good faith and the wrong complained of resulted from the willful misconduct of another and not through any intentional wrong or bad purpose of the one convicted.

3. Contracts—When Not Against Public Policy.—A contract is not against public policy unless it is injurious to the interest of the public, contravenes some established interest of society, is violative of some public statute, is against good morals, or tends to interfere with the public welfare or safety; and courts will not refuse to enforce a contract merely because it is remotely connected with an illegal transaction except in the instances above named.

4. Contracts—Purchase of Soft Drinks—Public Policy.—A contract for the purchase of a non-intoxicating or soft drink for resale in local option territory is not against public policy.

HUBERT MERIDETH and W. J. ROSS for appellant.

TAYLOR, EAVES & SPARKS and YEAMAN & YEAMAN for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

Henry Owens, a merchant engaged in retailing groceries and soft drinks in Muhlenberg county, bought of appellee, Henderson Brewing Company, through its agent, appellee Clark, a quantity of "Nutromal," classed as a "soft drink" and non-intoxicating, which he put upon sale at his store and place of business and after selling a small amount of the drink, Owens was arrested on a warrant issued by the county judge, charging him with the sale of an intoxicating beverage. When he was arraigned for trial he pleaded not guilty; was represented by counsel, made as good defense as he could, but was found guilty, fined and imprisoned for the sale of Nutromal.

Thereupon he brought this action against the Brewing Company and its agent, Clark, alleging that Clark as the agent came to his store and "solicited and procured an order for a liquid decoction commonly referred to as 'soft drinks,' which was manufactured and sold by the defendant Henderson Brewing Company, under the trade name of 'Nutromal,' and the label upon the bottle containing same had printed on it in conspicuous capitals 'A NON-INTOXICATING BEVERAGE;' that he so bought the said beverage for retail in his store and this fact was known to appellees; that appellant expressly stated to the agent of the Brewing Company that he desired to handle nothing but 'soft drinks'; that the defendants knew the percentage of alcohol contained in the said liquid decoction, and that the plaintiff had no knowledge thereof; that with said knowledge said defendants stated and represented to him that said goods did not produce intoxication, and warranted and guaranteed same to be non-intoxicating and represented, warranted and guaranteed that he would incur no liability, and subject himself to no penalties for violating the local option law by handling and reselling their said 'Nutromal' in said local option territory, and agreed and bound themselves to save him harmless from all damage that might result from any prosecution for violation of the law by handling same; that said statements were so made by defendants, and each of them, for the purpose of having plaintiff believe and rely upon them and to induce him to buy and handle said liquid decoction." And further averred in substance, that he did rely upon said statement, and purchased a quantity of the said Nutromal, which he in good faith thereafter offered for sale and sold with the results aforesaid; that the representations and statements of the agent of the Brewing Company were knowingly, willfully and fraudulently made for the purpose of deceiving and misleading appellant, and appellant was so deceived and misled; that at the time he sold said beverage he did not know or believe that said beverage was intoxicating, but said beverage was highly intoxicating and contained much more alcohol than ordinary beer; that he expended large sums of money in employing counsel and in defending himself at the trial, and large sums in payment of fines assessed against him for selling the Nutromal, and that he suffered great humiliation and mental agony by reason of his imprisonment on conviction of selling said drink.

To this petition the brewery and its agent filed a general demurrer which the court, after consideration, sustained, and Owens declining to plead further, his petition was dismissed, and he appeals to this court.

From the briefs it appears that the demurrer was sustained to the petition because the trial court was of opinion that the contract alleged and relied upon by Owens as the basis of his action, was illegal and against public policy. In this view we do not concur. The contract, according to the allegations of the petition, was perfectly lawful and did not violate the public policy of the state, as expressed in its Constitution, statutes and common law. Owens was, according to the allegations of his petition, engaged in the soft drink business. He desired to purchase only soft drinks, and so informed the agent of the brewery, who thereupon "stated and represented to him that said goods (Nutromal) did not produce intoxication, and warranted and guaranteed same to be non-intoxicating, and represented and warranted and guaranteed that he (Owens) would incur no liability and subject himself to no penalty for violating the local option law by handling and reselling the said Nutromal in said local option territory, and agreed and bound themselves (brewery, et al.) to save him harmless from all damage that might result from any prosecution for violation of the law by handling same." The contract, instead of including or allowing the sale of intoxicants in local option territory, was against such sale and provided that the beverage which the brewery was proposing to sell to Owens should be non-intoxicating and such as was lawful to be sold in local option territory. It was in accord with our statutes and our common law and was not immoral. The wrong complained of by Owens is the shipment by the brewery to him under said contract and in violation thereof, a beverage which was highly intoxicating and which he, not knowing its ingredients, innocently sold as a soft drink, and for which he was thereafter arrested, tried, fined and imprisoned.

"A contract is against public policy if it is injurious to the interest of the public or contravenes some established interest of society, or if it contravenes some public statute, or is against good morals, or tends to interfere with the public welfare or safety, or as it is sometimes put, if it is at war with the interests of so-

ciety and is in conflict with the morals of the time."
6 R. C. L., page 712.

, It is not every contract which may be remotely con-
nected with some illegal transaction which can be said
to be against public policy. While public policy forbids
the enforcement of an illegal or immoral contract, it is
as equally insistent that those which are lawful and con-
travenes none of its rules, shall be enforced, and not
held invalid on a bare suspicion of illegality. Those
contracts alone are against public policy which tend
clearly to injure public health, public morals, or public
confidence in the purity of the administration of the law,
or to undermine that sense of security for individual
rights, whether of personal liberty or of private prop-
erty, which any citizen ought to feel. The fact that
after the contract was made one of the parties breached
it by furnishing to the other an article entirely differ-
ent from that for which he contracted, and the vendee
innocently and without knowledge of the intoxicating
nature of the goods received, put them upon sale and
thereby brought down upon his unsuspecting head the
penalties of the law, does not change in the slightest the
contract entered into between the parties nor relieve the
brewery from responsibility to Owens for the loss and
damage he sustained by reason of its wrongful conduct.
The beverage was labeled "Nutromal," and also "Non-
intoxicating," which was sufficient to justify the belief
on the part of Owens that the beverage came within the
class usually called "soft drinks." Suppose Owens
had purchased from the brewery a case of "pop" or
"ginger ale," and the brewery had shipped him in place
of the beverage purchased, an intoxicating beverage,
put up in the usual pop or ginger ale bottle and so la-
beled, and he had innocently and without knowledge of
the changed condition sold the intoxicating beverage,
and thus became involved in the law with consequential
expenses, would anybody doubt that the brewery would
be responsible to Owens in damages notwithstanding the
fact that he had been tried and convicted of a violation
of the local option law? The mere fact that he was
tried and convicted of an infraction of the local option
law, which resulted not from his own willful act but
from the wrongful act of his vendor, will not preclude
him from demanding satisfaction from the one occasion-
ing the loss and injury. Any other rule would be very

dangerous because it would allow a brewery or other manufacturers to impose upon the retailer by furnishing intoxicating beverages in lieu of soft drinks, and thus involve an innocent retailer in the meshes of the law, while affording full protection to the real culprit. This the law does not allow.

It is said in 22 Cyc., page 83 that, "a contract of indemnity, the manifest object or tendency of which is the compounding of an indictable offense, or the interference with the due course of public justice, is illegal and void. So, as a general rule, a contract to indemnify against liability for publishing a libel, for committing a wilful and malicious trespass, or for illegal acts generally is illegal and void. But in construing a contract of indemnity no presumption will be indulged that a contract contrary to law and public policy was intended. If the illegal act is not the consideration of the contract and is entirely disconnected from it, the contract is valid although the occasion for making it arose out of the existence of an illegal act."

This contract was not to compound an indictable offense, or to interfere with the due course of justice. It did not contemplate the commission of any offense, and so far as the allegation of the petition would indicate, neither party had in mind at the time of the making of the contract anything but the upholding and preservation of the law. Courts are very unwilling to ascribe to a contract an illegal or unlawful purpose, and will not do so unless such purpose is manifest. That construction which harmonizes with the law and good morals will be given to the contract.

Our attention has been called to several cases from foreign jurisdictions as well as from this court, holding certain contracts as against public policy, but none of them, except one from the Court of Civil Appeals, 6th District of Texas, seems applicable to the facts under consideration. The Texas case, however, styled Houston Ice & Brewing Co. v. Sneed, 132 S. W. 386, is very like the one at bar. The court there held that the retailer who had been charged, convicted and required to pay fines for the sale of an alleged non-intoxicating beverage, was not entitled to be recouped for his loss. The cases cited in support of that opinion do not appear to us to be in point, and the reasons assigned for the conclusion reached in that opinion are not convinc-

ing and do not appear sound. The case did not reach the supreme court of Texas.

We are of opinion that the petition stated a cause of action and that the demurrer should have been overruled.

Judgment reversed for proceedings consistent with this opinion.